IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER SCOTT,

Plaintiff,

v.

Case No. 3:18-CV-2083-NJR

MOHAMMED SIDDIQUI, TARA
RACKLEY, and GAIL WALLS,

Defendants.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

Pending before the Court are Motions for Summary Judgment filed by Defendant Gail Walls (Doc. 75) and Defendants Tara Rackley and Mohammed Siddiqui (Doc. 78). For the reasons set forth below, the motions are granted.

### FACTUAL BACKGROUND

The following facts are undisputed for purposes of summary judgment.

Plaintiff Christopher Scott is an inmate in the Illinois Department of Corrections. He filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging Defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical need. Specifically, Scott alleges Defendants were deliberately indifferent to his right baby toe fracture when they refused to treat it. (Doc. 1; Doc. 14).

During the relevant time period, Scott was incarcerated at Menard Correctional Center. (Doc. 76-1). Defendant Gail Walls was the Healthcare Unit Administrator for Menard, Defendant Tara Rackley was a nurse employed by Wexford Health Sources, Inc.,

and Defendant Dr. Mohammed Siddiqui was a doctor employed by Wexford.

On April 2, 2017, Scott injured his right baby toe when his knee gave out and he stumbled on an uneven patch of grass or dirt while outside during yard time. (Doc. 76-1 at p. 12). As he tried to regain his balance, he felt his toe crack under his foot. (*Id.*). Scott testified that he knew it was broken because he felt it break and it was twisted to the side. (*Id.* at p. 15).

Two days later, on April 4, 2017, Scott was seen by Rackley in his cell block. (Doc. 80-3 at p. 5). Scott reported that his pain was a level 8 out of 10. (*Id.*). Rackley observed no swelling or discoloration, and the skin was intact. (*Id.*). She further noted that Scott self-reported a decreased range of motion and pain on ambulation. (*Id.*). Rackley educated Scott on safety measures and the application of cold compresses, prescribed 18 tablets of 200 mg ibuprofen to be taken as needed, and indicated Scott would be referred to a doctor. (*Id.*). Scott testified that he asked Rackley for a lay-in, or bedrest, but Rackley acted like she didn't know what to do. (Doc. 76-1 at p. 21).

Later that same day, Scott saw Dr. Siddiqui for his unrelated, chronic right knee pain. (Doc. 80-3 at p. 6). Scott tried to talk to Dr. Siddiqui about his toe, but Dr. Siddiqui told him to the appointment was for his knee and to put in a separate sick call for his toe. (Doc. 76-1 at p. 45).

Scott testified that he did put in separate sick call requests and wrote letters to Defendant Walls and "the doctor," but his toe was never examined. (*Id.* at p. 46). On April 13, 2017, Scott filed a grievance stating that he still had not received an x-ray or any medical care for his toe. (Doc. 1 at p. 13). He also complained that the ibuprofen Rackley

gave him did not help the pain. (*Id.* at pp. 13-14). The grievance did not mention Scott's appointment with Dr. Siddiqui or Dr. Siddiqui's alleged refusal to examine Scott's toe. (*Id.*).

On April 19, 2017, Walls responded to Scott's grievance. (*Id.* at p. 16). Walls noted that Scott saw Dr. Siddiqui on April 6, 2017,[1] for his right knee, but there was no mention of his toe. (*Id.*). She then stated: "I will have you scheduled as soon as possible." (*Id.*). She further told him to put in for sick call if he had any further problems. (*Id.*). Walls then spoke with the office coordinator, also known as the scheduler, and made an appointment for Scott to be evaluated by medical personnel. (Doc. 82 at p. 30).

On April 20, 2017, Scott sent a sick call request to the Healthcare Unit stating that he believed his right finger was fractured at the knuckle area. (Doc. 76-4 at p. 28). He reported that his finger was swollen and red, and he was in severe pain. (*Id.*). On April 26, 2017, Scott was seen for the injury to his right index finger. (Doc. 80-3 at p. 9). There is no mention of Scott's toe in his sick call request or progress note. (*Id.*). The next day, Dr. Siddiqui again examined Scott for his chronic knee pain, and again there is no mention of Scott's toe. (*Id.* at p. 10).

Over the next several weeks and throughout his time at Menard, Scott continued to submit sick call requests for various complaints including chest pain, knee pain, cold symptoms, asthma, pectoral pain, stomach pain, left foot pain, eye irritation, finger swelling, irregular heartbeats, and colon issues, but none mentioned his toe. (Doc. 76-4 at

---

[1] The grievance response states that Dr. Siddiqui saw Scott on April 6, 2017, but the medical records reveal that Dr. Siddiqui examined Scott on April 4, 2017. (Doc. 80-3 at p. 6).

pp. 29-38; Doc. 80-5 at pp. 1-48). Scott was examined by medical staff for these complaints, received an x-ray for his left foot injury, and was given a stress test for his chest pain. (*Id.* at pp. 11-54).

Scott testified that the pain in his toe lessened after approximately three weeks, but that he still has pain off and on. (Doc. 80-1 at pp. 40-41). He did not try to jog until about a year later, and he cannot play recreational sports. (*Id.*).

Scott was transferred to Western Illinois Correctional Center in March 2019. (*Id.* at p. 53). Scott did not mention his toe upon intake, nor has he submitted any requests to see a nurse or doctor regarding his toe. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The party opposing summary judgment must

offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on a claim of deliberate indifference, a plaintiff must show he suffered from an objectively serious medical condition and that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)) (internal quotation marks omitted). It is not necessary for a medical condition

to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to the inmate's health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

## I.   Objectively Serious Medical Condition

Defendants first argue that Scott's baby toe injury is not an "objectively serious medical condition." The Court tends to agree. Scott claims he broke his baby toe when it rolled under his foot while walking on an uneven patch of grass or dirt while outside at yard. During her examination two days after the injury, however, Defendant Rackley observed no swelling or bruising that might suggest a broken bone. (Doc. 80-3 at p. 5).

In fact, no medical professional has ever diagnosed Scott with a broken toe despite his numerous visits to the Healthcare Unit after his injury. Nor did he complain about his toe in any of his sick call requests for other medical issues. While the Court believes that the injury was initially painful, the fact that Scott did not mention his toe in subsequent requests indicates the injury was not objectively serious.

## II.    Deliberately Indifferent State of Mind

Even if Scott's toe injury was an objectively serious medical condition, he has failed to show that Defendants were deliberately indifferent to that condition. Scott is the only person who has deemed his toe broken despite numerous visits to the Healthcare Unit in the months following his injury. And, as Rackley and Dr. Siddiqui note, it "defies logic" to assert that the Healthcare Unit saw Scott for numerous other medical issues but refused to see him for a single medical complaint for months on end. (Doc. 85).

As to Rackley, she assessed Scott's toe injury, referred him to the doctor, educated him on safety measures and the use of cold compresses, and prescribed ibuprofen for his pain. Although Scott believed his baby toe was broken, Rackley was "not required to adopt his diagnosis" once she ruled out any signs of a broken bone from her own examination. *Jackson v. Anderson*, 770 F. App'x 291, 293 (7th Cir. 2019). Additionally, although Rackley's prescription of choice was not as strong as Scott would have liked, that does not make her deliberately indifferent. Rackley based the prescription for ibuprofen on her medical judgment. Given the lack of any observed swelling or bruising, there is no evidence that her choice of medication for Scott's injury was "blatantly inappropriate." *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (quoting *Pyles*

*v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)

("A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give

rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate

as to evidence intentional mistreatment likely to seriously aggravate the prisoner's

condition.'"). Likewise, the fact that Scott did not get his desired lay-in does not mean

Rackley was deliberately indifferent. *See Christopher v. Liu*, 861 F. App'x 675, 679–80 (7th

Cir. 2021) ("the Eighth Amendment does not give prisoners the right to demand specific

medical treatment"). Thus, the Court finds that Rackley is entitled to summary judgment.

Scott also has failed to present evidence that Dr. Siddiqui was aware of, and

consciously disregarded, his medical need. *See Farmer*, 511 U.S. at 837. Scott testified that

he had a pre-scheduled appointment with Dr. Siddiqui for his right knee injury and

"figured I could try to talk to him and see what he could do." (Doc. 80-1 at p. 43).

Dr. Siddiqui told him he would need to put in a separate sick call request for his toe. (*Id.*

at p. 44). This is the only interaction Scott had with Dr. Siddiqui regarding his toe. Scott

testified that he put in a sick call request every day or every other day after that visit, but

he never saw a healthcare professional for his toe. (*Id.* at pp. 45-46).

Based on this evidence, no reasonable juror would find Dr. Siddiqui was

deliberately indifferent to Scott's toe injury. While Dr. Siddiqui was aware of the injury,

he did not consciously disregard it. Scott's previously scheduled appointment with Dr.

Siddiqui was for his knee, so he told Scott to put in a sick call request to have his toe

evaluated. While Scott claims he submitted sick call requests and sent letters that went

unanswered, his contention is refuted by the record. Defendants presented evidence of

numerous sick call requests submitted after Scott's visit to Dr. Siddiqui, including one sent on April 20, 2017, regarding a reported fractured finger, but none mention his toe. Furthermore, even if Scott did submit sick call requests and letters related to his toe, he has put forth no evidence that Dr. Siddiqui received the requests or that he was responsible for scheduling an appointment. Thus, Dr. Siddiqui is entitled to summary judgment.

Finally, Walls became aware of Scott's injury when he filed a grievance on April 13, 2017, stating that he still had not received an x-ray or any medical care for his toe and that the ibuprofen Rackley gave him did not help the pain. Scott did not mention his visit with Dr. Siddiqui in the grievance or complain that Dr. Siddiqui refused to evaluate his toe. Walls then timely responded to the grievance after reviewing Scott's medical records. Walls noted that Scott had seen Dr. Siddiqui within a few days of his injury, but that there was no mention of a toe injury in the medical records. Whether Scott tried to raise the issue of his toe with Dr. Siddiqui and was told to put in a sick call request is irrelevant to the issue of whether Walls was deliberately indifferent. According to the information Walls had available to her, Scott saw the doctor shortly after his injury but did not discuss his toe. She then noted that she would have him scheduled as soon as possible and told him to put in for sick call if he had further problems.

According to Walls's responses to Scott's interrogatories, which Scott attached as an exhibit to his summary judgment briefing, Walls then spoke with the office coordinator, also known as the scheduler, and made an appointment for Scott to be evaluated by medical personnel. (Doc. 82 at p. 30). Walls further explained that the

scheduler creates a call line according to the appointments for a specific date and enters call passes into the call pass system. (*Id.* at p. 31). Last, the nurses tell security which inmates to escort to the Healthcare Unit on a given day. (*Id.* at p. 32).

According to this undisputed evidence, Walls scheduled an appointment for Scott with the scheduler. It was then up to other personnel to ensure Scott attended the appointment. Why Scott never saw a doctor specifically for his toe is unclear, but one things is apparent: Scott never again mentioned his toe in any sick call request or during any appointment with a medical professional. Accordingly, the Court finds that Walls is entitled to summary judgment.

## CONCLUSION

For these reasons, the Motions for Summary Judgment filed by Defendant Gail Walls (Doc. 75) and by Defendants Tara Rackley and Mohammed Siddiqui (Doc. 78) are **GRANTED**. Plaintiff Christopher Scott shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   March 31, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**